IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARALYZED VETERANS OF AMERICA; CALIFORNIA COUNCIL OF THE BLIND, INC.; AMERICAN ASSOCIATION OF PEOPLE WITH DISABILITIES; PAUL LONGMORE; IVANA KIROLA; RUSS BOHLKE; STEPHEN FORT; and DAN KYSOR, <br><br>                Plaintiffs, <br><br>    v. <br><br>BRUCE MCPHERSON, as Secretary of State for the State of California; JOHN ARNTZ as Director of Elections of San Francisco County; MICHAEL SMITH as Registrar of Voters of Marin County; DAVE MCDONALD as Acting Registrar of Alameda County; and FREDDIE OAKLEY as County Clerk-Recorder of Yolo County, <br><br>                Defendants. | No. C 06-4670 SBA <br><br> **ORDER** |

This matter comes before the Court on Defendants' Motions to Dismiss [Docket Nos. 9, 11, 12, 14, 16] and Plaintiffs' Request for Judicial Notice [Docket No. 47]. Having considered the parties' filings, the Court finds this case suitable for resolution without a hearing. Defendants' Motions to Dismiss are GRANTED IN PART AND DENIED IN PART, and Plaintiffs' Request for Judicial Notice is GRANTED.

## **BACKGROUND**

**a. Parties**

Plaintiff Paralyzed Veterans of America (PVA) is an organization which advocates for civil rights and independence of veterans who have experienced spinal cord injury or dysfunction. First Amended Complaint (FAC) at ¶ 15. PVA has approximately 20,000 members nationwide and 1,600

members in California, some of whom are registered to vote in San Francisco County and Marin County. *Id*. Plaintiff California Council of the Blind, Inc. (CCB) is a nonprofit organization whose mission is to gain independence and equality of opportunity for blind and visually impaired Californians. *Id*. at ¶ 16. CCB has 1,300 to 1,500 members nationwide, some of whom are registered to vote in Alameda County. *Id*. Plaintiff American Association of Persons with Disabilities (AAPD) is a nonprofit organization dedicated to promoting the economic self-sufficiency and political empowerment of people with disabilities. It has approximately 68,000 members nationwide and 6,000 members in California, some of whom are registered to vote in San Francisco, Marin, Alameda, and Yolo counties. *Id*. at ¶ 17.

Individual Plaintiffs are eligible voters with disabilities. *Id*. at ¶ 18. Plaintiff Paul Longmore is manually impaired and cannot manipulate a writing instrument with his hands. He votes in San Francisco County. *Id*. at ¶ 19. Plaintiff Ivana Kirola is also a manually impaired resident of San Francisco County. *Id*. at ¶ 20. Plaintiff Russ Bohlke is a manually impaired resident of Marin County. *Id*. at ¶ 21. Plaintiff Stephen Fort is a legally blind resident of Alameda County. *Id*. at ¶ 22. Plaintiff Dan Kysor is a legally blind resident of Yolo County. *Id*. at ¶ 23.

Defendant Bruce McPherson is the Secretary of State of California. *Id*. at ¶ 24. Defendant John Arntz is the Director of Elections for San Francisco County. *Id*. at ¶ 25. Defendant Michael Smith is the County Clerk/Registrar of Voters of Marin County. *Id*. at ¶ 26. Defendant Dave McDonald is the Acting Registrar of Voters for Alameda County. *Id*. at ¶ 27. Defendant Freddie Oakley is the County Clerk-Recorder for Yolo County. *Id*. at ¶ 28. All Defendants are sued in their official capacities only.

**b.  Facts**

Plaintiffs object to the voting systems used by San Francisco, Marin, Alameda, and Yolo Counties.

San Francisco and Marin Counties used the Election System & Software AutoMARK Voter Assist Terminal ("AutoMARK") voting system in the June 2006 election. FAC at ¶ 11. The

2

1   California Secretary of State certified this system for use in California on August 3, 2005. *Id*. at ¶
2   44. However, Plaintiffs allege that the system does not allow voters with disabilities the opportunity
3   to cast their votes or have their votes counted privately and independently: "Voters with manual
4   dexterity issues, such as voters who cannot grasp paper, will be forced to rely upon the assistance of
5   a third-party to remove a marked ballot from the AutoMARK and place the marked ballot into the
6   ballot box where it will be cast and subsequently counted." *Id*. at ¶ 45.

7        Direct recording electronic (DRE) voting systems contain an audio component that enables
8   visually impaired voters to listen to candidate names through headphones and to vote using
9   distinctively shaped keys. *Id*. at ¶ 54. DRE systems may also utilize mouth or head sticks, a "sip
10  and puff" device, or other accessible switch technology that enable manually impaired voters to
11  select candidates. *Id*. According to Plaintiffs, San Francisco and Marin Counties did not have DRE
12  systems at every polling location, which would have allowed manually disabled voters unable to use
13  the AutoMARK system without assistance to vote privately and independently. *Id*. at ¶ 46.

14       Plaintiffs allege that the lack of a DRE system in San Francisco and Marin Counties caused
15  them injuries including: the risk of having their votes revealed by the third party or overheard and
16  observed by other people; the risk of the third party attempting to influence their choice of
17  candidate; the risk of having their votes improperly cast; being singled out in the polling place;
18  having to wait long periods of time until a third party is available to assist the voter; and suffering
19  embarrassment and stress during the voting process. *Id*. at ¶ 47. They claim that they will be
20  discouraged from voting as a result.

21       Alameda County used a DRE voting system for the June 2006 election at early voting
22  locations for disabled voters. *Id*. at ¶ 59. The DRE system had an attached voter verified paper
23  audit trail (VVPAT). *Id*. A VVPAT is a paper summary of a voter's electronic voting selections as
24  recorded by the DRE system. *Id*. at ¶ 55. The voter must review the information before completing
25  the voting procedure. *Id*. According to Plaintiffs, the addition of the VVPAT device rendered the
26  DRE voting system inaccessible to voters with visual disabilities: "[s]ighted voters can review their

3

vote on the paper produced by the VVPAT to ensure that it comports with their desired selection. Non-sighted voters, however, do not have access to or the ability to review the information provided by the VVPAT device." *Id.* at ¶¶ 57-58. Plaintiffs assert that the use of the DRE system with an attached VVPAT in Alameda County will cause disabled voters to suffer the same injuries described in the previous paragraph. *Id.* at ¶ 60.

Plaintiffs state that a recently-enacted California law called the Bowen bill requires DRE systems to include a VVPAT. *Id.* at ¶¶ 55-56. They allege that the Bowen bill violates the Help America Vote Act (HAVA).[1] *Id.*

Yolo County used an optical scan voting system at all of its polling places in the June 2006 election. *Id.* at ¶ 67. Plaintiffs do not describe the optical scan system. They allege that it prevents voters with manual or visual disabilities from casting their vote, or having their vote counted, in a private and independent manner, because they are forced to rely on the assistance of third parties. *Id.* at ¶¶ 68-69. Plaintiffs assert that the use of the optical scan system in Yolo County will cause disabled voters to suffer the same injuries described above. *Id.* at ¶ 70.

**c. Claims**

Plaintiffs assert five claims for relief. First, they claim that all Defendants have violated their right to Equal Protection under the Fourteenth Amendment by approving and administering "an unequal, discriminatory system of voting, which has denied and threatens to continue to deny, an equal opportunity to vote to visually and manually disabled voters in San Francisco, Marin,

---

[1] The Bowen bill, SB 370, provides that on a DRE system, the electronic record is considered the official record of the vote, except that the VVPAT shall be the official paper audit record and shall be used in the required 1% manual tally and any full recount. In other words, the Bowen Bill implicitly requires that all DRE systems also include a VVPAT. Plaintiffs object to this practice as violative of HAVA, because it "renders the DRE voting system – which otherwise would permit voters who are disabled to vote independently, unassisted and in private like all other voters – inaccessible to voters with visual disabilities for recounts." FAC at ¶ 57.

In their Opposition to the Motion to Dismiss, Plaintiffs claim that the appropriate way to challenge the validity of the statute is to sue state and local officials charged with implementing it, citing *NAACP v. San Francisco Unified School District*, 484 F. Supp. 657, 665 (N.D. Cal. 1979). Thus, their challenge to the Bowen bill is incorporated into their claim that Alameda county violated HAVA by using a DRE system with a VVPAT. Because, as will be discussed, HAVA does not confer rights enforceable through section 1983, the Court does not reach Plaintiffs' challenge to the Bowen bill.

Alameda, Yolo, and other counties." *Id*. at ¶ 30.

Second, Plaintiffs claim that Defendant McPherson has violated HAVA, by failing to certify any voting system that will provide accessibility, privacy, and independence for all voters with manual and visual disabilities. *Id*. at ¶ 37. Plaintiffs frame this claim as a violation of 42 U.S.C. § 1983, which provides a civil action for deprivation of federal rights by a person acting under color of state law. *Id*. at ¶ 39.

Third, Plaintiffs Longmore, Kirola, Bohlke, AAPD and PVA assert that Defendants Arntz and Smith have violated HAVA "pursuant to Section 1983" by failing to provide accessible DRE or other accessible voting machines at polling places in San Francisco and Marin Counties. *Id*. at ¶¶ 43-51.

Fourth, Plaintiffs Fort and CCB claim that Defendant McDonald has violated HAVA "pursuant to Section 1983" by using a DRE system with an inaccessible VVPAT device at Alameda County polling places. *Id*. at ¶¶ 53-64.

Fifth, Plaintiffs Kysor and CCB claim that Defendant Oakley has violated HAVA "pursuant to Section 1983" by using an inaccessible optical scan voting system at Yolo County polling places. *Id*. at ¶¶ 66-74.

Plaintiffs request that the Court enter a declaratory judgment that California, the Secretary of State, and San Francisco, Marin, Alameda, and Yolo Counties are "in violation of HAVA and the Fourteenth Amendment pursuant to Section 1983." Further, Plaintiffs ask the Court to order the Secretary of State to present a plan and timetable for bringing California into compliance with HAVA within 60 days. Plaintiffs also ask the Court to enter declaratory judgment that each of the subject counties' voting systems violates HAVA and the Fourteenth Amendment, and that California's statutory requirement that all DRE systems include a VVPAT device violates the Fourteenth Amendment and HAVA pursuant to Section 1983. Plaintiffs ask the Court to require San Francisco and Marin Counties to provide a DRE or other system that will ensure accessibility, privacy, and independence for disabled voters. They ask the Court to prohibit Alameda County

5

from using the DRE system with the inaccessible VVPAT device for recounts, and to mandate that Yolo County provide voting systems that will ensure accessibility, privacy and independence for all disabled voters. Finally, Plaintiffs ask for fees and costs including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

Defendant McPherson filed the instant Motion to Dismiss on September 22, 2006. Each of the other Defendants has joined in McPherson's Motion. Thus, when the Court refers to "Defendants' Motion," and Defendants' arguments, it is referring to McPherson's Motion and the arguments raised therein. However, Defendants Smith, McDonald, and Oakley have submitted separate briefs which, in addition to incorporating McPherson's arguments, make some additional arguments. The Court will cite to these briefs by name where necessary.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if it appears beyond a doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). For purposes of such a motion, the complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest & Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994). All reasonable inferences are to be drawn in favor of the plaintiff. *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997).

The court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see Miranda v. Clark County, Nev.*, 279 F.3d 1102, 1106 (9th Cir. 2002) ("[C]onclusory allegations of law and unwarranted inferences will not defeat a motion to dismiss for failure to state a claim."); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 987 ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."), *as amended by*, 275 F.3d 1187 (9th Cir. 2001).

# ANALYSIS

**a. Plaintiffs' Request for Judicial Notice**

Plaintiffs request that the Court take judicial notice of the following documents: (1) the Congressional Record of Senate proceedings on HAVA; (2) House Report No. 107-329 on HAVA; (3) the U.S. Department of Justice Civil Rights Division Voting Section web page; and (4) The California Secretary of State's web page on the administrative complaint procedure under HAVA.

Federal Rule of Evidence 201(b) permits judicial notice of facts "not subject to reasonable dispute" in that they are "either (1) generally known within the territorial jurisdiction or the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The Court may take judicial notice of matters of public record outside the pleadings on a motion to dismiss. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). The documents of which Plaintiffs request judicial notice are capable of accurate and ready determination, and Plaintiffs cite cases showing that courts routinely take judicial notice of legislative history and of information on government websites. *See* RJN at 2-3. Accordingly, Plaintiffs' Request for Judicial Notice is GRANTED.

**b. Fourteenth Amendment Equal Protection**

Plaintiffs allege that the Secretary "has approved and administers an unequal, discriminatory system of voting," which deprives Plaintiffs "of their fundamental right to vote in the same manner as all other voters." FAC at ¶¶ 30-31.

The right to vote is fundamental, as it is preservative of all other rights. *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). However, the level of scrutiny to be applied to voting regulations is dependent on the circumstances. The Supreme Court has made it clear that strict scrutiny does not apply to every law or practice that imposes some burden on the right to vote. *Burdick v. Takushi*, 504 U.S. 428, 432-33 (1992). Rather,

> A court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as

7

> justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights.
> Under this standard, the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized when those rights are subject to severe restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance. But when a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions.

*Id*. at 434 (citations omitted).

Defendants argue that the rational basis standard should apply to Plaintiffs' Fourteenth Amendment claims, citing language from *Burdick* as well as *Weber v. Shelley*, 347 F.3d 1101 (9th Cir. 2003). In *Weber*, the court held that the use of touchscreen voting systems was not subject to strict scrutiny, because it did not severely restrict the right to vote. The court held that the defendant had offered a rational basis for its decision, and rejected the plaintiff's Fourteenth Amendment claim. However, Plaintiffs correctly point out that *Weber* was at the summary judgment stage, and the court had facts before it such as the results of state testing showing the benefits of the touchscreen system. This case is before the Court on a motion to dismiss, which means that the Court must decide whether <u>any</u> set of facts could support Plaintiffs' claim that the challenged voting systems violate the Fourteenth Amendment.[2] It is true that *Weber* contained broad language – "it is the job of democratically-elected representatives to weigh the pros and cons of various balloting systems. So long as their choice is reasonable and neutral, it is free from judicial second-guessing" – but *Weber* did not hold, and could not have validly held in light of *Burdick*, that every election regulation and practice is subject to rational basis review.

Plaintiffs rely on *Common Cause Southern Christian Leadership Conference of Greater Los Angeles v. Jones*, 213 F. Supp. 2d 1106, 1109-10 (C.D. Cal. 2001). There, the court was presented

---

[2] On a motion to dismiss under Rule 12(b)(6), the court ought not to consider evidentiary matter beyond the complaint. "[I]f any state of facts, even those inconsistent with the evidentiary matter presented to the court, could have supported the allegations in the plaintiff's complaint," then dismissal is not appropriate. *Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d 426, 430 (9th Cir. 1978).

8

with a motion to dismiss a complaint alleging that punch card voting systems violate the Fourteenth Amendment. The court denied the motion, holding that "[t]he parties may test their arguments regarding the evidentiary support for this allegation on summary judgment. The parties should also address the legal issue of the standard of review . . . at the time of summary judgment." *Compare American Association of People with Disabilities v. Shelley*, 324 F. Supp. 2d 1120, 1128 (C.D. Cal. 2004) (holding, on motion for preliminary injunction, that plaintiffs had no likelihood of success on their Fourteenth Amendment Equal Protection claim, because rational basis review applied to defendant's decision to decertify touch-screen voting machines, and defendant's factual findings regarding problems with such machines provided a rational basis for the decision).

Defendants make a conclusory assertion that the rational basis standard applies because Plaintiffs' complaint describes no severe restriction on their right to vote. Reply at 2. However, Defendants cite no case holding that, as a matter of law, practices that interfere with the ability to vote privately and independently do not constitute a severe restriction on the right to vote. Indeed, Congress clearly thought that privacy and independence in voting were important enough to enact a statute – HAVA – intended in part to protect those interests. Defendants have not shown that there is no factual scenario under which the complained-of practices could impose a "severe" rather than a "reasonable, nondiscriminatory" restriction on the right to vote. Thus, it is unclear at this stage of the proceedings what level of scrutiny should apply, and dismissal is not appropriate. The Motion to Dismiss is DENIED as to Plaintiffs' Fourteenth Amendment claim.

**c.  HAVA**

HAVA Section 301 provides that voting systems used in federal elections shall "be accessible for individuals with disabilities, including nonvisual accessibility for the blind and visually impaired, in a manner that provides the same opportunity for access and participation (including privacy and independence) as for other voters." 42 U.S.C. § 15481(a)(3)(A). Further, the voting system must "satisfy the requirement of subparagraph (A) through the use of at least one direct recording electronic voting system or other voting system equipped for individuals with

9

1  disabilities at each polling place." 42 U.S.C. § 15481(a)(3)(B).

2  HAVA does not itself create a private right of action. *Sandusky County Democratic Party v.*
3  *Blackwell*, 387 F.3d 565, 572 (6th Cir. 2004); *Taylor v. Onorato*, 428 F. Supp. 2d 384, 386 (W.D.
4  Pa. 2006); *Florida Democratic Party v. Hood*, 342 F. Supp. 2d 1073, 1077 (N.D. Fla. 2004).
5  Plaintiffs do not argue otherwise. Instead, Plaintiffs seek to proceed under 42 U.S.C. § 1983,
6  claiming that HAVA creates federal rights.

7  Whether a federal statute creates rights enforceable through section 1983 is determined
8  according to the standards articulated in a line of Supreme Court cases starting with *Maine v.*
9  *Thiboutot*, 448 U.S. 1 (1980), and culminating with *Gonzaga University v. Doe*, 536 U.S. 273
10 (2002). In *Thiboutot*, the Supreme Court recognized that section 1983 may be used to enforce rights
11 created by federal statutes. Next, in *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1
12 (1981), which involved a statute enacted pursuant to the Spending Clause, the court held that "unless
13 Congress 'speak[s] with a clear voice,' and manifests an 'unambiguous' intent to confer individual
14 rights," federal laws may not be privately enforced by § 1983." *Gonzaga*, 536 U.S. at 280 (quoting
15 *Pennhurst*, 451 U.S. at 17, 28)). In *Blessing v. Freestone*, 520 U.S. 329, 340 (1997), the court
16 clarified that in order to seek redress through section 1983, "a plaintiff must assert the violation of a
17 federal *right*, not merely a violation of federal *law*." *Blessing* set forth three factors to guide judicial
18 inquiry into whether or not a statute confers a right: "Congress must have intended that the provision
19 in question benefit the plaintiff," "the plaintiff must demonstrate that the right assertedly protected
20 by the statute is not so 'vague and amorphous' that its enforcement would strain judicial
21 competence," and "the provision giving rise to the asserted right must be couched in mandatory,
22 rather than precatory, terms." 520 U.S. at 340-41. Further, if Congress expressly forbade recourse
23 to § 1983, or created "a comprehensive enforcement scheme that is incompatible with individual
24 enforcement under § 1983," then the court may not allow a remedy under § 1983. *Id.*

25 Most recently, *Gonzaga* rejected "the notion that our cases permit anything short of an
26 unambiguously conferred right to support a cause of action brought under § 1983. . . . it is *rights*, not

10

the broader or vaguer 'benefits' or 'interests' that may be enforced under the authority of that section." 536 U.S. at 283. For a statute to create a private right, it must be "phrased in terms of the persons benefitted," and use "explicit rights-creating terms." *Id.* at 284. "Accordingly, where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit" under § 1983. *Id.* at 286.

Thus, the question before the Court is whether HAVA Section 301 unambiguously creates a federal right – in other words, whether it is phrased in terms of the persons benefitted and uses rights-creating language, and whether there is any indication that Congress intended it to create new individual rights.

There appears to be only one case addressing this precise question: *Taylor v. Onorato*, 428 F. Supp. 2d 384 (W.D. Pa. 2006). There, the court applied *Gonzaga*, and held that "[n]owhere in section 301 or elsewhere in the Act, does Congress indicate an intention that section 301 may be enforced by private individuals." *Id.* at 386. The court noted that HAVA section 401 provides that, if a jurisdiction is not compliant with section 301, the Attorney General may bring a civil action against it for declaratory and injunctive relief. *Id.* at 371; 42 U.S.C. § 15511. "Had Congress intended to allow any registered voter to also bring a claim to enforce section 301 it would have clearly said so." *Id.* Further, the court held that section 301 "does not grant any private rights to an identifiable class of people. Rather, section 301 imposes an obligation on the states and local jurisdictions to put in place a voting system that meets certain criteria." *Id.* Finally, the court noted that Congress required states to establish and maintain administrative complaint procedures, under which voters may seek redress for alleged violations of the Act – which, the court implied, is inconsistent with private enforcement through § 1983.

Plaintiffs point out that *Taylor* is not binding on this Court, and argue that it was wrongly decided because it failed to consider the legislative history of HAVA "that reflects clear Congressional intent to create new rights." Opposition at 15. Further, Plaintiffs argue that the *Taylor* court relied inappropriately on *Gonzaga*, because *Gonzaga* applies to Spending Clause

11

statutes and HAVA was enacted pursuant to Congress' power to make laws governing the time, place and manner of federal elections. *Id*. at 14-15.

With regard to the latter argument, it is true that *Gonzaga* and the cases it built upon contain language directed to Spending Clause statutes. *See, e.g.*, 536 U.S. at 280 ("Since *Pennhurst*, only twice have we found spending legislation to give rise to enforceable rights."); *id*. at 281 ("Our more recent decisions, however, have rejected attempts to infer enforceable rights from Spending Clause statutes."). No case has directly decided whether *Gonzaga* applies outside the context of Spending Clause legislation. *Compare Save Our Valley v. Sound Transit*, 335 F.3d 932, 961 n.13 (9th Cir. 2003) (Berzon, J., dissenting) (stating that *Gonzaga* "seems to be confined to Spending Clause statutes") *with Qwest Corp. v. City of Santa Fe, New Mexico*, 380 F.3d 1258, 1265 n.2 (10th Cir. 2004) (assuming, without deciding, that *Gonzaga* is not limited to Spending Clause statutes). However, the decision contains broad language indicating that its analytical framework should apply to non-Spending Clause statutes. *See, e.g.*, 536 U.S. at 286 ("where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action"); *id*. at 290 ("In sum, if Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms"). Moreover, Plaintiffs do not provide any <u>reason</u> why the *Gonzaga* test should be inapplicable to statutes enacted pursuant to Congress' power to regulate elections, or cite any authority for the proposition that such statutes are somehow more enforceable through § 1983 than Spending Clause statutes. Nor do Plaintiffs propose any alternative test for the Court to apply. In fact, Plaintiffs rely heavily on *Sandusky*, which used the *Blessing* and *Gonzaga* framework to determine whether HAVA Section 302 is enforceable through section 1983. Thus, Plaintiffs' argument that *Gonzaga* should not apply to HAVA Section 301 is unpersuasive. Accordingly, the Court rejects Plaintiffs' argument that *Gonzaga* is inapplicable because HAVA is not a Spending Clause statute.

However, Plaintiffs are correct that *Taylor* is not binding on this Court. Notwithstanding its

12

1 persuasiveness, an independent determination of whether HAVA Section 301 meets the *Gonzaga*
2 test is required.

3       In this Court's view, the statute does not unambiguously confer a federal right.  Section 301
4 is directed at the requirements for voting systems used in federal elections; it instructs states and
5 jurisdictions that voting systems must meet certain criteria.  Although the provision at issue here,
6 section 301(a)(3), clearly benefits individuals with disabilities, the language used is not explicitly
7 rights-creating: it states that "<u>the voting system shall</u>" be accessible for individuals with disabilities
8 (emphasis added).  42 U.S.C. § 15481(a)(3).  This stands in marked contrast to HAVA Section 302,
9 which provides that if an individual declares that he or she is a registered voter and eligible to vote,
10 but the individual does not appear on the list of eligible voters at his or her polling place, "<u>such
11 individual shall be permitted </u>to cast a provisional ballot."  42 U.S.C. § 15482(a) (emphasis added).
12 *Sandusky* and *Hood* held that Section 302 contains unambiguous "rights-creating language," such
13 that it is enforceable through section 1983.  The *Sandusky* court stated that the language of Section
14 302 "mirrors the rights-creating language of Title VI of the Civil Rights Act of 1964 and Title IX of
15 the Education Amendments of 1972, which both state that '[n]o person . . . shall . . . be subjected to
16 discrimination,' see 42 U.S.C. 2000d; 20 U.S.C. 1681(a), and which both create individual rights
17 enforceable under § 1983."  387 F.3d at 572-73.

18       Plaintiffs argue that Section 301 is "unmistakably focused on individuals with disabilities,"
19 and that the legislative history of HAVA makes clear that Congress intended to provide individuals
20 with disabilities the right to vote privately and independently.  Opposition at 7.  They selectively
21 quote the legislative history of HAVA: it is true that Senator Dodd, speaking in support of the
22 legislation, stated that "there are new rights here," that "the accessibility standard for individuals
23 with disabilities is perhaps one of the most important provisions in this legislation," and "the
24 purpose of this requirements [sic] is to ensure that the disabled have an equal opportunity to cast a
25 vote and have that vote counted, just as all other non-disabled Americans, with privacy and
26 independence."  *See* 148 Cong. Rec. S10488-02 (RJN Ex. A).  However, it is also true that Senator

13

Durbin stated that among the shortcomings of the legislation was "the lack of an explicit, strong federal remedy through which voters can individually vindicate the rights granted them in this legislation." Further, Senator Dodd stated that while he would have preferred that the statute extend a private right of action to aggrieved parties, the House "simply would not entertain such an enforcement provisions [sic]. Nor would they accept Federal judicial review of any adverse decision by a State administrative body." 148 Cong. Rec. S10488-02 (RJN Ex. A). Moreover, much of the commentary on Section 301 was focused on the fact that the federal government would provide funding to states to make polling places accessible to the disabled: Senator Bond, in introducing the legislation, stated that "this bill also provides funding to help ensure the disabled have access to the polling place and that the voting system is fully accessible to those with disabilities." Senator Bond then went on to discuss what was, in his view, the most important aspect of the bill – prevention of voter fraud, of which the provisional balloting system set out in Section 302 was a part.

This demonstrates the difficulty with reliance on legislative history: "[w]e encounter all the usual problems . . . such as not knowing whether those who spoke represented the views of those who did not speak. Some speakers dilute clarity with diplomacy, as can be expected of serious legislators trying to accomplish a serious purpose." *Voting Integrity Project, Inc. v. Keisling*, 259 F.3d 1169, 1172 (9th Cir. 2001). Of course, the most reliable indicator of Congress' intent (or lack thereof) to provide a federal right is the language of the statute itself. The language of Section 301 does not evince an intent to create individual rights.

Plaintiffs next contend that the fact that HAVA section 301 imposes obligations on state and local election officials does not mean that it does not also create an enforceable individual right. In support of this argument, they cite *Watson v. Weeks*, 436 F.3d 1152, 1160 (9th Cir. 2006), in which the court found that a statute mandating that a state plan "must provide for making medical assistance available . . . to all individuals" was enforceable through § 1983. Relying on *Gonzaga*, the Court held that this provision revealed a congressional intent to create an individualized right, because it was "unmistakably focused on the specific individuals benefitted." *Id.* According to

14

Plaintiffs, "[j]ust as all eligible individuals in *Watson* enjoy the right to medical assistance, all individuals with disabilities have the right to vote without third-party assistance." Opposition at 10. This argument has some force; HAVA section 301 does deal directly with the needs of disabled voters. However, the Court disagrees that the "obligation on state officials is only secondary to Section 301's primary focus on individuals with disabilities." *Id*. HAVA section 301 is framed in terms of requirements for voting systems, which are chosen by state and county officials. Although the word "individuals" is used, the statute is more accurately characterized as referring to the benefitted group in the aggregate, unlike the statutory provision at issue in *Watson*. *Gonzaga* made it clear that the fact that a statute is intended to benefit a certain group does not mean that it created rights which members of that group may enforce through section 1983.

Plaintiffs also argue that enforcement through section 1983 is not expressly or impliedly foreclosed by HAVA. The Court is inclined to agree. HAVA makes no reference to § 1983, and the facts that the Attorney General is empowered to enforce HAVA and that states must provide administrative procedures to review citizen complaints are insufficient to constitute a "comprehensive enforcement scheme" incompatible with individual enforcement. As the Sixth Circuit held, "[w]e do not find that these provisions, taken together, indicate a congressional intention to 'shut the door' to federal judicial review of state actions, which would be otherwise unavailable to citizens whose right to vote provisionally has been denied or abridged." *Sandusky*, 387 F.3d at 573.

The Court is also inclined to agree with Plaintiffs that HAVA 301 is not so vague or amorphous that its enforcement would strain judicial competence. Although the language is broad – "accessibility," "privacy," and "independence" are not entirely concrete or well-defined concepts – a court could undertake an evaluation of whether a voting system offered the same opportunity to disabled voters as non-disabled voters. And the provision is couched in mandatory, not precatory terms – it begins "[e]ach voting system used in an election for Federal office shall meet the following requirements."

15

This is a close, difficult question. However, *Gonzaga* clarified that the factors set out in *Blessing* are not meant to supplant the primary, dispositive question: whether the statute unambiguously confers a federal right, not merely a benefit to a particular class. The Court is ultimately unpersuaded that HAVA Section 301 does so, and thus HAVA Section 301 cannot be enforced through § 1983. Accordingly, Defendants' Motion to Dismiss is GRANTED as to Plaintiffs' HAVA claims. These claims are dismissed with prejudice; because Plaintiffs have no right of action under HAVA, amendment would be futile.

**d. Standing**

The county Defendants argue that the individual Plaintiffs lack standing to challenge the counties' use of particular voting machines because they have not sufficiently demonstrated injury in fact.

Specifically, Defendant McDonald (the Acting Registrar of Alameda County) points out that Plaintiff Fort states that he voted in Alameda County, but not that he voted on a DRE with a VVPAT, the challenged apparatus. "He may have voted by absentee ballot or by paper ballot counted by optical scan." McDonald Motion at 6. McDonald claims that Fort does not allege that he was in fact unable to vote privately and independently. Thus, according to McDonald, Fort has merely asserted "hypothetical" or "generalized grievances."[3] Likewise, Defendant Oakley (the Yolo County Clerk-Recorder) argues that Plaintiff Kysor has not established that he voted or attempted to vote using the Hart optical scan voting system, the challenged device. Defendant Smith (the Marin County Registrar of Voters) asserts that Plaintiffs – presumably meaning Bohlke, the only Marin

---

[3] McDonald also states that Alameda County now has a contract with Sequoia Voting Systems for optical scan machines and one DRE per polling place, which will be used in the November election. McDonald Motion at 6. Thus, McDonald asserts, Plaintiff's claims are not yet ripe. Actually, if Alameda County has changed its voting equipment, and the new equipment allows disabled individuals to vote privately and independently, that would render Plaintiffs' claims moot, not unripe. In any event, Plaintiffs are correct that these are facts outside the complaint that the Court need not consider on a Motion to Dismiss.

16

1 County Plaintiff – fail to establish standing against him for the same reasons.[4]

2 To establish standing, Plaintiffs must allege (1) that they have suffered an "injury in fact," meaning an invasion of a legally protected interest which is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical,'" (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted). A plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself. *Madsen v. Boise State University*, 976 F.2d 1219, 1220 (9th Cir. 1992).

Plaintiffs argue that they have alleged sufficient facts to establish standing, because the FAC states that each individual Plaintiff voted in the June 2006 election, that the counties used equipment that does not allow disabled voters to vote privately and independently, and that the individual Plaintiff "wishes to vote privately, unassisted and independently but is unable to do so." *See* FAC at ¶¶ 21-23; Opposition at 21-22. Plaintiffs point out that in ruling on a motion to dismiss, the Court must presume that "general allegations embrace those specific facts that are necessary to support the claim;" thus, "factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 560-61 (citations omitted). Further, Plaintiffs argue that Defendants' reliance on *Madsen* is misplaced because the individual Plaintiffs have submitted themselves to the challenged practice by voting in the June 2006 election.

It is true that the FAC does not state that any of the individual Plaintiffs actually used or attempted to use the challenged voting equipment. See FAC at ¶¶ 19-23. Rather, it states that these individuals voted in the last election, intend to vote in the future, and are unable to vote privately and independently due to Defendants' choice of voting equipment. Further, many of Plaintiffs' allegations of injury are framed in terms of risks or potential harms rather than present harms. *See,*

---

[4] The County Defendants are referred to collectively for convenience, but Defendant Arntz, the Director of Elections for the City and County of San Francisco, has joined McPherson's motion in its entirety and does not assert that the individual Plaintiffs lack standing to pursue claims against him. *See* Arntz Notice of Joinder.

*e.g.*, FAC at ¶ 47 (alleging that Plaintiffs "risk" having their votes revealed, having third parties attempt to influence their vote, and having their votes improperly cast; and alleging that Plaintiffs "will have to" be singled out in the polling place, wait long periods of time for assistance, and suffer embarrassment and stress). However, this is not a case in which Plaintiffs are merely citizens or taxpayers asking the Court to adjudicate "abstract questions of wide public significance," *see Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 475 (1982). Rather, Plaintiffs are people with disabilities who, taking the allegations in the complaint as true, will be imminently unable to vote privately and independently. This is a real threatened injury, not a hypothetical or conjectural injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (holding that the plaintiff must show that "he has sustained or <u>is immediately in danger of sustaining</u> some direct injury") (emphasis added).

Further, the Court disagrees that Plaintiffs' alleged injuries are not fairly traceable to the County Defendants' actions. The counties chose their voting systems, and Plaintiffs allege that they have been harmed by those systems. If this Court were to enjoin Defendants' choice of voting systems, or order them to put into place systems that allow disabled individuals to vote privately and independently, Plaintiffs' grievances would be redressed.

Accordingly, the Court rejects the County Defendants' argument that Plaintiffs lack standing.

The County Defendants also argue that Plaintiffs' claims against the counties must fail because if voting equipment is certified by the Secretary of State, a county is permitted to use it. The Secretary of State is responsible for certifying voting machines, and no machine may be used unless it has been approved by the Secretary. *See* Cal. Elections Code § 19201. County Defendants cite *Common Cause*, 213 F. Supp. 2d at 1108, for the proposition that a county is not a proper defendant in a case challenging the use of a particular voting machine because the county is bound by the choice of certified machines. However, this is a mischaracterization of the *Common Cause* decision. There, the Secretary of State was named as the sole defendant, and he argued that the counties should have been sued because they select their respective voting systems. The court held

18

1 that the Secretary of State was a proper defendant, not that individual counties would not have also
2 been proper defendants. Thus, the Court rejects this argument. The County Defendants have not
3 offered any persuasive argument as to why they are not proper defendants in this case.

### **CONCLUSION**

Based on the foregoing, IT IS HEREBY ORDERED THAT Defendants' Motions to Dismiss [Docket Nos. 9, 11, 12, 14, 16] are DENIED IN PART AND GRANTED IN PART. Plaintiffs' HAVA claims are dismissed with prejudice. IT IS FURTHER ORDERED THAT Plaintiffs' Request for Judicial Notice [Docket No. 47] is GRANTED.

IT IS FURTHER ORDERED THAT the Case Management Conference set for November 28, 2006 at 1:00 p.m. is continued to **January 24, 2007 at 3:15 p.m.** The parties shall meet and confer prior to the conference and shall prepare a joint Case Management Conference Statement, which shall be filed no later than January 15, 2007. Counsel for Plaintiff shall be responsible for filing the Case Management Conference Statement, as well as for arranging the Case Management Conference call. All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

IT IS SO ORDERED.

Dated: 11/27/06

SAUNDRA BROWN ARMSTRONG
United States District Judge