United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Paralyzed Veterans of America, et al.,

        Plaintiffs,

    v.

Bruce McPherson, et al.,

        Defendants.

_____/

No. C 06-4670 SBA (JL)

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL (Docket #s 76, 79)**

**Introduction**

All discovery in this case has been referred by th district court (Hon. Saundra Brown Armstrong) pursuant to 28 U.S.C. §636 (b) and Civil Local Rule 72. The parties appeared before the Court on Defendant's motion to compel answers at deposition. Attorney for Plaintiff California Council of the Blind, Inc. "CCB" was Sharla Manley, HOWREY LLP, Los Angeles. Attorney for Defendant Dave MacDonald, Registrar of Voters for Alameda County was Raymond S. Lara, Deputy County Counsel. The matter having been fully considered and good cause appearing, it is hereby ordered that the motion is granted. CCB shall provide witness testimony on Topics 3-5 and 7-9. The Court will sign the parties' stipulated protective order.

**United States District Court**
For the Northern District of California

1

**Background**

2      Based in Alameda County, CCB is a nonprofit organization dedicated to gaining "full

3 independence and equality of opportunity for all blind and visually impaired Californians."

4 FAC, ¶ 16.  Some of its "members reside in, are registered to vote in, and intend to vote in

5 future elections to be conducted in Alameda County."  FAC, ¶ 16.

6      On behalf of its visually impaired members, CCB challenges Alameda County's

7 voting system on equal protection and federal statutory grounds in this lawsuit.[1]  See FAC,

8 ¶ 16.  To comply with the Help America Vote Act ("HAVA"), Alameda County provides a

9 direct recording electronic ("DRE") voting system in certain precincts.  See FAC, ¶ 16.

10 California law requires that a DRE have a voter verified paper audit trail ("VVPAT").  See id.

11 Under California law, the VVPAT serves as the official ballot only for the required 1%

12 manual tally or in the case of a full recount.  See Cal. Elec. Code § 19253(b).  Outside

13 these two scenarios, the VVPAT serves no other purpose, and the DRE electronic record is

14 the official ballot.  See id. (a).

15      The FAC alleges that CCB's visually impaired members "wish to cast their ballots in

16 future elections in their precincts independently, unassisted, and in secret, the same as all

17 other voters in Alameda County who are not disabled, but will be unable to do so" because

18 of Alameda County's use of the VVPAT.  FAC, ¶ 16.  Consequently, CCB claims that

19 Alameda County's "use of the DRE voting system with a VVPAT violates the CCB

20 members' federally protected rights under HAVA and equal protection rights under the

21 Fourteenth Amendment."  FAC, ¶ 16.  The FAC further alleges that Macdonald threatens

22 "to deprive plaintiffs, including the individual plaintiffs and members of the organizational

23 plaintiffs, of their fundamental right to vote in the same manner as all other voters."  FAC, ¶

24 31.

25 ───────────────

26 [1] Several plaintiffs filed this lawsuit against the California Secretary of State and several
registrars of voters of different counties located in Northern California, including Macdonald.  The

27 plaintiffs alleged that the defendants violated the Help America Vote Act ("HAVA") and the equal
protection rights of manually and visually disabled voters under the 14th Amendment of the U.S.

28 Constitution. See First Amended Complaint ("FAC"), ¶¶ 29-74. This Court dismissed the HAVA claims,
so only the equal protection claims remain.

**United States District Court**
For the Northern District of California

**THIS MOTION**

On April 26, 2007, MacDonald served on CCB a deposition subpoena on 14 topics pursuant to Rule 30(b)(6), Federal Rules of Civil Procedure. (Ex. B to motion to compel).

CCB objects to 6 of the 14 deposition topics:

Topic 3.    CCB's visually impaired members who are registered to vote in Alameda County;

Topic 4.    CCB's visually impaired members who voted in Alameda County using a DRE touch-screen voting machine (including the audio equipment and key pad) during the June and November 2006 elections;

Topic 5.    The precincts where CCB's visually impaired members voted in Alameda County;

Topic 7.    All incidents where any CCB visually impaired member felt that his or her vote was compromised or improperly cast in Alameda County during the June and November 2006 elections;

Topic 8.    All incidents where any CCB visually impaired member's vote was unduly influenced by an assisting third party in Alameda County during the June ad November 2006 elections;

Topic 9.    All incidents where any CCB visually impaired member was unable to vote for the candidate or measure of his or her choice in Alameda County during the June and November 2006 elections.

**CCB'S POSITION**

**CCB Has Raised A Good Faith First Amendment Challenge To Macdonald's Discovery Requests.**

The freedom to associate is a protected First Amendment right.  This freedom to associate, the U.S. Supreme Court has ruled, has a "vital relationship" to the right to privacy in one's associations.  *See NAACP*, 357 U.S. at 462 ("Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association[.]").  Numerous cases establish that compelled disclosure of an individual's

United States District Court

For the Northern District of California

1    private associational affiliations and activities, such as those at issue in the instant case,

2    frequently pose one of the most serious threats to the free exercise of this constitutionally

3    endowed right.  *See id.  See also Talley v. California*, 362 U.S. 60, 64-65, 4 L. Ed. 2d 559,

4    562-63, 80 S. Ct. 536, 538-39 (1960); *Bates v. Little Rock*, 361 U.S. 516, 523, 4 L. Ed. 2d

5    480, 485, 80 S. Ct. 412, 416 (1960). MacDonald does not, and cannot, dispute that these

6    well-established principles protect political organizations like CCB.[2]  Instead, MacDonald

7    contends that these protections do not apply where the political organization brings suit,

8    thereby putting "their rights at issue."  Motion at 9.  This attempt to dodge the Supreme

9    Court's pronouncements on the broad protections afforded by the First Amendment is

10   contrary to the law in the Northern District of California.  The First Amendment privilege is

11   not waived when one brings, rather than defends against, a lawsuit.  *Adolph Coors*, 570 F.

12   Supp. at 209 and n.25 ("we find such a generic distinction, although facile, as much a

13   potential 'chill' upon hallowed First Amendment freedoms by indirectly penalizing its

14   exercise, as would be a direct assault.").  MacDonald's contention has no merit.

15   Macdonald Does Not Have A Compelling Interest In The Names Of CCB's Rank And File

16   Members.

17       **The Names, And Other Personal Information, Of CCB's Members Do Not Go To**

18   **The Heart Of The Lawsuit**

19       MacDonald must, "at a minimum," demonstrate a high degree of relevancy for the

20   information he seeks.  *See Adolph Coors*, 570 F. Supp. at 208-09 ("The tribunal

21   considering a private plaintiff's discovery request should demand a heightened showing of

22   'relevancy,' once a constitutional challenge for withholding information has been lodged.");

23   *Int'l Union, etc. v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.*, 590 F.2d 1139, 1152

24   (D.C. Cir. 1978) (court must ask whether the information sought goes to the heart of the

25   lawsuit).    The heart of CCB's claim against MacDonald is that defendant Alameda

26   County's use of the DRE voting system with a VVPAT device violates the CCB members'

27   ─────────────────────

28       [2] It is further established that CCB may assert the constitutional rights of its members.
     *See NAACP*, 357 U.S. at 459.

1   equal protection rights under the Fourteenth Amendment because its members should

2   have the ability to "verify their vote on the ballot before it is cast and counted."  First

3   Amended Complaint, ¶ 16.  Instead of pressing for information about how the addition of

4   the VVPAT device renders an otherwise accessible voting system into a discriminatory

5   voting system, the deposition topics at issue ask for the following:

6       **CCB's visually impaired members who are registered to vote in Alameda**

7   **County (Topic No. 3).**

8       MacDonald's general statement that this information is needed because CCB's

9   claims relate to "voting issues in Alameda County" is insufficient.  Motion at 8.  "Voting

10  issues in Alameda County" is not the heart of the claim as set forth above—the addition of

11  the VVPAT device is the heart of the claim.  Further, MacDonald does not describe with

12  any specificity what he will do with this information.  *Adolph Coors*, 570 F. Supp. at 209

13  (litigant moving to compel must describe the importance of the information sought "with a

14  reasonable degree of specificity").

15      **CCB's visually impaired members who voted in Alameda County using a DRE**

16  **touch-screen voting machine during the June and November 2006 elections (Topic**

17  **No. 4).**

18      MacDonald states only that since CCB's claims concern the DRE system, he has a

19  right to discover members who actually used the system.  Motion at 8.  Again, this is not

20  sufficient.  MacDonald must establish how information about CCB's members is important

21  to its case, particularly since CCB has already provided discovery on the use of the DRE

22  touch-screen voting machine by the visually impaired.  See Thom Decl., Exs. A at ¶. 7-9,

23  11; D at ¶. 4-5.

24      **The precincts where CCB's visually impaired members voted in Alameda**

25  **County (Topic No. 5).**

26      MacDonald says only that this will be helpful because not all precincts used DRE

27  voting machines so members could use other voting methods.  Motion at 8.  Again, it is not

28  clear how this is distinct from information that CCB has provided in the past about the

**United States District Court**

For the Northern District of California

1 different voting systems that are available and the ways in which these voting systems

2 infringe on the fundamental right of its members to vote.  See Thom Decl., Exs. A at ¶. 8-

3 10; D at ¶. 4-7.  Unless MacDonald could say, which he has not, that the voting systems at

4 these other precincts allow non-sighted voters to vote just as sighted voters do, then this

5 information does not go to the heart of the claim.

6      MacDonald also claims that Topic Nos. 7-9 are discoverable because they relate to

7 "the alleged constitutional violations."  MacDonald fails to explain why he so desperately

8 needs the names of the CCB members involved or any other personal information.  Motion

9 at 8.  Indeed, CCB could and would provide information about the incidents in which

10 members felt "their votes were compromised or improperly cast," were "unduly influenced

11 by an assisting third party," or felt they "were unable to vote for the candidate or measure of

12 his or her choice" during the June and November 2006 elections without providing the

13 names of the individuals.  Motion at 5; Lara Decl., Ex. E.  MacDonald does not explain why

14 this type of information would be insufficient.  See Motion at 8.  Also, disclosure of the

15 names of these individuals at the close of fact discovery, so late in these proceedings, can

16 advance no legitimate, let alone compelling, interest held by MacDonald.

17      MacDonald's reliance on *Savola v. Webster*, 644 F.2d 743 (8th Cir. 1981), is

18 misplaced.  First, the complained-of constitutional violations in Savola focused on

19 harassment by a government agency of specific individuals in the Communist Party.  644

20 F.2d at 744-45.  Thus, discovery of the identities of these individuals was ordered.  644

21 F.2d at 747.  Here, however, the allegations concern the voting rights of a group or class of

22 persons, rather than unconstitutional action targeting specific individuals.[3]  Thus, the

23 information that CCB has provided on how different voting systems impact blind and

24 visually impaired voters is sufficient.  See Thom Decl., Exs. A at ¶. 7-11; D at ¶. 4-7.

25

26 —————————————

27      [3]Significantly, even in *Savola*, the court denied discovery of the "names and addresses of members" of the Minnesota Communist Party as overbroad.  644 F.2d at 747 (government

28 failed to establish a substantial relationship between complaint and need to know the identities of the members of the party).

**United States District Court**

For the Northern District of California

**MacDonald Did Not Use Less Restrictive Means Of Obtaining The Information Sought**

MacDonald bears the burden of establishing that no alternative sources exist through which he could obtain the relevant information in a less chilling manner. *See Adolph Coors*, 570 F. Supp. at 210. In other words, MacDonald must show that the information sought was not discoverable through alternative sources and that he made reasonable attempts to secure the information elsewhere. *See Int'l Union*, 590 F.2d at 1152. Here, MacDonald claims to have had "no way" of learning the identities of the members of CCB. Motion at 9. This claim is simply not true. First, CCB provided the name of Stephen Fort, a CCB member. Indeed, MacDonald had a full and fair opportunity to depose Fort and fails to mention this fact, let alone explain why the Fort deposition was not enough. If MacDonald truly made reasonable efforts to learn the identities of CCB's other members, he would have learned of CCB's leaders who were publicly identified on the association's website. See Thom Decl., ¶ 10. Also, Alameda County argues that it has a good working relationship with various associations to ensure their members can vote properly. Motion at 10. But Alameda County has not explained why these organizations did not provide the information it needed. Certainly, MacDonald had a reasonable place to start but did not make reasonable efforts to obtain the information he claims to need. The issue for this Court, as in *NAACP*, is whether CCB should be required to disclose its rank and file members, after having disclosed substantially all other information requested by MacDonald. In *NAACP*, the association disclosed all information relevant to the government interest (e.g., total number of members in the relevant area, its officers and directors, its charter, and its business records), so the association was not compelled to take the further step of producing its list of rank and file members. 357 U.S. at 464-65.

Likewise, CCB has disclosed at least one member's name, Stephen Fort, to MacDonald. See Thom Decl., Ex. A at p. 3. Indeed, CCB also offered to produce a witness to testify on Topic Nos. 7-9 without providing member names, but MacDonald has rejected this less restrictive means. In addition, CCB has responded to all discovery requests by MacDonald in all material aspects. See Thom Decl., Exs. A-B, D. Thus,

MacDonald does not have a compelling interest in conducting a deposition wherein CCBs members' names and personal information such as addresses, are provided in response to Topic Nos. 3-5 and 7-9.

United States District Court

For the Northern District of California

**The Chilling Effect On CCB's First Amendment Rights Outweigh**

**MacDonald's Need For Names Of Specific Members At The Close Of Fact Discovery**

MacDonald suggests that the CCB, unlike NAACP, has not shown proof of reprisal or a chilling effect. Motion at 9-10. CCB need not establish chill with a certainty, just a probability. *See Adolph Coors*, 570 F. Supp. at 209-10. Where discovery is sought of an advocacy organization's membership list through litigation, the potential to chill the right to free speech and associated First Amendments rights is great. *See NAACP*, 357 U.S. at 462-63. Jeff Thom, the president of CCB, declares that compelled disclosure would have a chilling effect on the exercise of First Amendment rights.[4] Thom Decl., ¶ 9, 11-13. If forced to disclose the identities of California Council of the Blind's members, even if limited to those members in Alameda County, CCB would likely withdraw from the lawsuit. Thom Decl., ¶ 13. Over the long run, disclosure would make CCB reluctant to bring future lawsuits to enforce the constitutional and statutory rights of the blind and visually impaired. Thom Decl., ¶ 12.

CCB has never been asked to divulge the names of its members in previous litigation, but if ordered to disclose the names of its members now, CCB would be reluctant to vindicate its rights through litigation in the future. Thom Decl., ¶ 12. Such a disclosure also would likely lead to a reduction in membership in two ways. First, many affected members would, at the very least, consider leaving the organization and, second, disclosure of membership lists would make blind persons in the community reluctant to join CCB. Thom Decl., ¶ 11.

MacDonald represents that Alameda County's previous cooperation with "various organizations" on voting rights makes a chilling effect "hard to imagine." Motion at 10. This representation has no weight. The fact that Alameda County has cooperated with "various organizations" on voting rights tells the Court nothing about how the County would behave toward members of organizations that have sued them to enforce their voting rights.[5]

---

[4] When evaluating the right to obtain discovery consistent with a constitutional privilege under the First Amendment, the "Magistrate must marshall all relevant facts and considerations put forward by both sides on behalf of their positions." *See Adolph Coors*, 570 F. Supp. at 207.

United States District Court

For the Northern District of California

Further, MacDonald ignores the harm of disclosure where, as here, its co-defendants are also governmental agencies.  Compelled disclosure in this case exposes CCB's members to potential harassment by both local and state authorities.[6]  In sum, the chilling effect of disclosure clearly outweighs the speculative assertion that the names of CCB rank and file members are needed by MacDonald, particularly where reasonable alternatives were available but not fully explored.

### MacDONALD'S POSITION

MacDonald argues convincingly that Topic Nos. 3-5 and 7-9 are discoverable. "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ."  Fed. R. Civ. P. 26(b)(1).  More importantly, "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining and supporting its objections."  *Cable & Computer Tech. v. Lockheed Sanders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997).  CCB does not contest the relevance of any of the topics, but only objects that the members' information is privileged.  CCB has failed to satisfy its burden to support this objection.

*Savola v. Webster*, 644 F.2d 743 (8th Cir. 1981), is on point.  The court in that case held that certain membership information that relates to "specific allegations in the complaint regarding . . . violations of constitutional rights" was discoverable over first amendment considerations.  See id. at 747.  In *Savola*, the Minnesota Communist Party sued the FBI, alleging that the FBI improperly seized property from one of its deceased members to harass other party members.  *See id.* at 745.

---

[5] Even if Alameda County is receptive to working with organizations on voting rights, the non-offensiveness of an advocacy group does not diminish the degree of First Amendment protection it deserves.  *See Gibson v. Fl. Legislative Investigative Comm.*, 372 U.S. 539, 570, 9 L. Ed. 2d 929, 941, 83 S. Ct. 889, 905-06 (1963) (J. Douglas concurring) ("whether a group is popular or unpopular, the right of privacy implicit in the First Amendment creates an area into which the Government may not enter").

[6] This potential harm is not adequately minimized by an attorneys' eyes only designation as proposed by MacDonald, because the attorneys for governmental agencies are for all intents and purposes "in-house" counsel.  Attorneys' eyes only designations best protect a party's private information when the attorneys who are given access to the information are outside counsel.

1   The FBI served interrogatories asking for the "name and residence address [of] all

2   members of the [party] alleged to have been harassed" and the "name and residence

3   address [of] all members of the [party] whose rights are alleged to have been violated by

4   the defendants." Id. at 745. The court allowed discovery into these topics over first

5   amendment objections. See id. at 747.

6   Macdonald is seeking the same information here. He does not want all of the

7   information for all of CCB's 1300-1500 members statewide. See FAC, ¶ 16. He only wants

8   information related to those members who are registered to vote in Alameda County

9   because CCB's claims relate only to voting issues in Alameda County. See Lara Decl., Ex.

10  B (30(b)(6) notice of deposition **Topic No. 3**).

11  **Topic No. 4** asks for information related to the members who voted on the DRE

12  during the relevant elections. Again, this information is highly relevant and properly limited.

13  CCB's claims only concern the DRE system in Alameda County, and Macdonald has a right

14  to discover the members who actually used the system.

15  **Topic No. 5** concerns the precincts where CCB's visually impaired members voted

16  in Alameda County. This information is important because not all of the precincts had DRE

17  voting machines. If the members voted elsewhere, then this fact would show that they

18  were able to use other voting methods.

19  **Topic Nos. 7-9** are likewise discoverable. As in *Savola*, these topics concern the

20  constitutional violations of CCB's members. They seek information related to any incidents

21  where CCB's visually impaired members alleged that their votes were compromised,

22  improperly cast, or unduly influenced.

23  **Topic No. 9** seeks information related to any incident where the members could not

24  vote for their choices during the relevant elections. Because they relate to the alleged

25  constitutional violations, these topics go to the heart of the case and Macdonald's defense.

26  The cases relied on by CCB in its meet and confer letter support Macdonald's

27  position. As in the case of *International Union, UAW v. National Right to Work Legal*

28  *Defense & Education Foundation, Inc*, 590 F.2d 1139, 1152 (D.C. Cir. 1978), Court noted,

courts make two inquiries into First Amendment challenges to discovery. First, courts ask

United States District Court

For the Northern District of California

1   whether the information can "be discovered through alternative sources and has the party

2   seeking disclosure made reasonable attempts to obtain the information elsewhere."  Id.

3   Second, courts ask whether the information goes "to the heart of the lawsuit."  Id.

4        **Macdonald has no way of discovering this information through alternative**

5   **sources.**

6        CCB is the only entity which has the members' information related to its allegations

7   made against Macdonald.  Unlike *International Union*, 590 F.2d at 1153, Macdonald cannot

8   contact the members directly because he has no way of knowing who they are.  Even with

9   their names, of course, he cannot discover whether they voted with a DRE and whether

10  their votes were compromised in any way because of the DRE during the relevant

11  elections.  In short, he has no "reasonable basis to know where to begin."  Id. at 1154

12  (quoting *Carey v. Hume*, 492 F.2d 631, 639 (D.C. Cir. 1974)).  Because he cannot discover

13  this information through alternative sources, Macdonald has no way to make "reasonable

14  attempts" to obtain the information elsewhere.  *Id.*

15       These topics go to the heart of the lawsuit as it relates to CCB's claims against

16  Macdonald.  In its complaint, CCB claims that Macdonald violated its visually impaired

17  members' rights in Alameda County by using the DRE with a VVPAT in the June and

18  November 2006 elections.  Information related to those members' voting in Alameda

19  County, therefore, is highly relevant.

20       CCB's cases are also distinguishable from this case in key aspects.  In each case,

21  the association or foundation challenging discovery was pulled into court; it did not choose

22  to go to court.  See *National Ass'n for the Advancement of Colored People v. Alabama*, 357

23  U.S. 449, 452-53 (1958) ("*NAACP*") (noting that the state "brought an  equity suit . . . to

24  enjoin the Association from conducting further activities); International Union, 590 F.2d at

25  1144 (unions sued the foundation).  Here CCB chose to sue Macdonald; Macdonald did not

26  bring CCB into court.  CCB's allegations opened discovery regarding its members in

27  Alameda County because it put their rights at issue.

28       Moreover, in *NAACP*, the NAACP demonstrated proof of reprisal or a chilling effect.

It "made an uncontroverted showing that on past occasions revelation of the identity of its

**United States District Court**
For the Northern District of California

1   rank-and-file members has exposed these members to economic reprisal, loss of

2   employment, threat of physical coercion, and other manifestations of public hostility." 357

3   U.S. at 462.

4       CCB has not shown any such proof of reprisal or chilling effect.  In their one-page

5   meet and confer, they only cite to the First Amendment in conclusory fashion.  CCB has not

6   shown that its members would suffer economic reprisal, loss of employment, physical

7   coercion, or any other manifestation of public hostility.  CCB has not shown (or even

8   alleged) that releasing the information would have a chilling effect on its membership rolls.

9       It does not because it cannot.  **First, the parties can designate the membership**

10  **portions of the testimony as attorneys' eyes only with limited disclosure**.  *See*

11  *International Union*, 590 F.2d at 1153, n.19 (suggesting a similar solution).  Second, it is

12  hard to  imagine how CCB's membership list would expose its members to economic

13  reprisal, loss of employment, physical coercion, or any other form of public hostility.

14  Macdonald and Alameda County have worked in good faith with various associations to

15  ensure that their members can vote properly.

16       Consequently, CCB's designated witness should testify as to all of the information

17  called for in Topic Nos. 3-5 and 7-9, and this Court should overrule the objections.

18       For the foregoing reasons, this Court should grant Macdonald's Motion To Compel

19  Compliance with Discovery Obligations.

20                                **Conclusion**

21       The Court grants MacDonald's motion to compel deposition testimony on topics 3-5

22  and 7-9. The information is relevant and not privileged. CCB fails to show a chilling effect

23  on its members or that the information is obtainable in any other way.

24       DATED: August 22,  2007

25                              _____

26                              JAMES LARSON
                                Chief Magistrate Judge

27

28